BUTTS, Justice.
Joyce Cole, as administratrix of the estates of her parents, Sol Bill Stewart and Gladys Stewart, deceased, appeals from a declaratory judgment entered in favor of Alfa Mutual Insurance Company, Inc. (“Alfa”).
The Stewarts died when their tour bus, which was traveling through the state of Colorado, was struck by a boulder that rolled down a large hill after being dumped from a front-end loader at a point higher atop the mountain. Cole claimed benefits under three separate uninsured motorist policies that her parents had previously purchased from Alfa, arguing that the front-end loader from which the boulder fell was an “uninsured vehicle” within the terms of the policies. Alfa then brought this declaratory judgment action, seeking a determination of whether Cole was entitled to uninsured motorist benefits; Cole counterclaimed for a declaration that she was entitled to coverage under the policies. Following an ore tenus proceeding, the trial court entered a judgment for Alfa and against Cole. Cole appeals.
*81 Where evidence is presented to the trial court ore terms, a presumption of correctness exists as to the court’s conclusions on issues of fact; its determination will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gaston v. Ames, 514 So.2d 877, 878 (Ala.1987).
The record shows the following: On August 10,1987, the Colorado Highway Department sent a maintenance worker, Phillip Pacheco, to U.S. Highway 40 to remove four large boulders lying in a ditch on the edge of the highway. Pacheco moved the first and second rocks by picking up each rock with the front-end loader and then driving the loader several hundred feet up the paved surface of U.S. Highway 40, then over and across approximately 4.8 feet of an adjacent paved shoulder. He then traveled approximately 73 feet over an unpaved “fill” area that was adjacent to the paved shoulder and within the right-of-way of U.S. Highway 40. This area is not used for the general circulation of vehicles on U.S. Highway 40.
Pacheco dumped the first two rocks over the edge of the fill area into a ravine and then made a return trip of several hundred feet back up U.S. Highway 40 to pick up the third rock. When Pacheco dumped the third rock at the edge of the fill area, it did not slide down into the ravine as the other two rocks had; rather, it began rolling down the fill area below the dump site and into the trees there. At the end of its path, the third rock collided with the Stewarts’ tour bus as the bus was traveling along a lower portion of U.S. Highway 40.
At the time of the accident, the Stewarts had valid uninsured motorist coverage under three Alfa policies, which contained the following exclusion:
“An uninsured automobile does not include any vehicle:
“3. designed for use mainly off public roads except while on public roads....”
It is stipulated that the front-end loader is designed for use mainly off public roads and that the loader was on the fill area, well off U.S. Highway 40, when Pacheco dropped the boulder. Cole argues, however, that the fill area may be categorized as a public road.
In Cannon v. State Farm Mutual Automobile Ins. Co., 590 So.2d 191 (Ala.1991), this Court defined the term “public road” for purposes of a uninsured motorist provision that was nearly identical to the one at issue here. We defined the term “public road” as “the surface on which the [uninsured] might operate the vehicle.” Cole broadly construes this definition to include the fill area, because, she argues, it was a surface upon which a vehicle could travel. Her construction, however, takes the definition out of the context provided by the full language of Cannon:
“We look to the plain, ordinary meaning or popular sense of the word ‘public road’ as it pertains to this insurance contract. A ‘public road’ has been defined as a road used for ‘general circulation of vehicles.’ A public road includes the ‘ “traveled” portion’ of a roadway, designed or ordinarily used for vehicular travel, exclusive of the berm or shoulder. The term ‘ “public road” connotes that portion of the public way ordinarily used for vehicular traffic in contradistinction to the “sidewalk” area.’ Thus, we agree with the trial court’s holding that the term ‘public road,’ in the context of this uninsured motorist provision, means ‘the surface on which the [uninsured] might operate the vehicle.’”
Cannon, 590 So.2d at 194-95 (citations omitted, emphasis omitted). Based on this full definition, we disagree with Cole’s argument that the fill area from which Pacheco dropped the boulder can be categorized as a “public road”; while it may be possible to travel upon it, the land is not an area designed for the general circulation of traffic and therefore cannot be considered a public roadway.
Cole next argues that the process of Pacheco’s driving down the road to pick up the boulder and then traveling back across the road into the fill area to roll the boulder down the hill was one continuous, unbroken activity that resulted in the accident; be *82 cause the travel across the road was thus inherently part of the causation, Cole concludes, it was not necessary that the front-end loader actually be on the public road when Pacheco dropped the boulder.
We disagree with Cole’s argument that merely because the front-end loader used the highway to transport the third boulder from its place in the ditch to the place where it fell from the fill area, the accident can be said to have happened on a public road. We addressed a similar argument in Payne v. Alabama Farm Bureau Mutual Casualty Ins. Co., 441 So.2d 886 (Ala.1983), where this Court again interpreted an uninsured motorist provision comparable to the one involved here. There, the insured drove a farm tractor down a public road, then stopped on private property to visit a friend, and later suffered an accident on the property. The insured argued that the accident should be considered to have happened upon a public road because it occurred during a stopover in an otherwise continuous trip being made on that road. We rejected this argument, holding that the language of the policy unambiguously provided coverage for off-road vehicles only if the accident actually occurred on a public road, based on a rational perception by insurance companies as to the intended use of off-road vehicles.
Here, as in Payne, the plain language of the policies unambiguously bars recovery of benefits for off-road accidents. Because the accident originated while the uninsured front-end loader was off the public road, the exclusion in the Stewarts’ uninsured motorist policies applies to preclude benefits. The trial court’s declaratory judgment for Alfa is therefore affirmed.
AFFIRMED.
SHORES, HOUSTON, INGRAM and COOK, JJ., concur.